

Sealed
Public and unofficial staff access
to this instrument
prohibited by court order.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

OCT 16 2019

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | |
| | § | CRIMINAL NO. 17-CR-724-S2 |
| LUIS DE JESUS RODRIGUEZ, | § | |
| LILIBETH CAMARGO, and | § | |
| HELEN LEON MESA | § | |

## SECOND SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment:

1.      Defendant Luis De Jesus Rodriguez ("RODRIGUEZ") was a bounty hunter in Houston, Texas, using the name Htown Hunter, and was a resident of the United States.

2.      Defendant Lilibeth Camargo ("CAMARGO") was an ex-girlfriend of RODRIGUEZ and was a resident of the United States.

3.      Defendant Helen Leon Mesa ("MESA") was the girlfriend of RODRIGUEZ and a resident of the United States.

4.      Alexander Victoria Isaacs ("ISAACS") was a Colombian national and resident.

5.      In early 2016, RODRIGUEZ and CAMARGO engaged in a scheme to target and recruit young women in Colombia and to bring them to the United States to work as strippers and prostitutes.

6.      In April 2016, RODRIGUEZ and CAMARGO recruited MESA.  After her arrival in the United States, MESA and RODRIGUEZ engaged in a sex trafficking scheme to target and recruit young, vulnerable women in Colombia, and within the United States, and force and coerce

them to perform commercial sex acts in and outside of a strip club, Michael's International, also known as Chicas Locas, located at 6440 Southwest Freeway, in Houston, Texas ("Michael's").

7.     ISAACS targeted and recruited women in Colombia to work for RODRIGUEZ and MESA.  ISAACS worked at a bank in Colombia, where he was responsible for facilitating loans to individuals and to businesses.  In that capacity, he targeted young women.  To bring these women to the United States, ISAACS, RODRIGUEZ, and MESA worked together to obtain fraudulent non-immigrant B1/B2 visitor visas for the women under false pretenses.

8.     K.M.L., D.T.G., L.G.S., and E.C.R. were adult Colombian females whom RODRIGUEZ, MESA, and ISAACS recruited.  After the victims' arrival in Houston, Texas, RODRIGUEZ and MESA forced, threatened, defrauded, and coerced the victims into engaging in commercial sex acts in Houston, Texas.

9.     A.B.O. was an adult Cuban female already residing in the United States whom RODRIGUEZ and MESA recruited and forced, threatened, defrauded, and coerced into engaging in commercial sex acts in Houston, Texas.

## The Scheme

10.     Generally, RODRIGUEZ, CAMARGO, MESA, and ISAACS targeted and recruited young, vulnerable women in Colombia.  RODRIGUEZ, CAMARGO, and MESA used false promises of wealth and lucrative job opportunities as exotic dancers to entice young women to travel to the United States.  To bring the women into the United States, RODRIGUEZ, MESA, and ISAACS engaged in visa fraud by coordinating and facilitating the obtaining of fraudulent United States non-immigrant B1/B2 visas for the victims.

11.     After the women arrived in the United States, RODRIGUEZ and MESA defrauded and coerced some of the victims into signing significant debt bondage contracts requiring the

victims to pay approximately $200 USD to $250 USD every day.  To enforce the exorbitant payment scheme, RODRIGUEZ and MESA claimed to have connections with law enforcement in the United States and Colombia, and engaged in physical acts of violence, threats of violence to the victims and their family members, and threats of deportation.  Despite previously having promised the victims that RODRIGUEZ and MESA would not require the women to engage in commercial sex, RODRIGUEZ and MESA's debt bondage scheme, coupled with their use of violence and threats, compelled the women to engage in commercial sex acts to meet their daily quota amounts.

12.     When the victims fell behind in their daily payments, RODRIGUEZ forced the victims to have commercial sex with men whom RODRIGUEZ selected.   In exchange, RODRIGUEZ reduced the amount of debt.

Recruitment

13.     As a part of their scheme, RODRIGUEZ, CAMARGO, and MESA recruited women in Colombia directly and through ISAACS, by word of mouth, and by hosting "casting calls." At the casting calls, for example, RODRIGUEZ, MESA, and ISAACS told the women that RODRIGUEZ was a successful and respected businessman, who needed dancers for his nightclub in Houston, Texas.  To convince the young women that RODRIGUEZ could be trusted, the Defendants showed the women YouTube videos of RODRIGUEZ as a bounty hunter and his interviews with media.  The Defendants gave the women the impression that RODRIGUEZ was either a police officer or otherwise had connections with law enforcement in the United States.

14.     RODRIGUEZ, CAMARGO, MESA, and ISAACS falsely promised the women earnings of approximately $500 USD to $1,000 USD each day.  The Defendants further promised to pay all upfront costs of travel to the United States, such as Colombian passport fees and U.S.

3

visa fees.  The Defendants also promised housing, transportation, a gym, and a maid, among other benefits, in the United States.

15.     RODRIGUEZ, MESA, and ISAACS assured some women they would not have to prostitute in the United States.  Because prostitution is legal in Colombia, the Defendants' assurances, along with RODRIGUEZ's claims of being affiliated with law enforcement, were particularly important to some of the women.

16.     RODRIGUEZ, MESA, and ISAACS connected the women with visa preparers at PriceTravel in Cali, Colombia.  The visa preparers submitted fraudulent United States visa applications, which falsely claimed tourism was the intended purpose of the travel, among other false assertions, and RODRIGUEZ, MESA and ISAACS coached the women in preparation for their visa interviews at the United States embassy.  To facilitate this visa fraud scheme, RODRIGUEZ and MESA wired money to ISAACS and to an unindicted co-conspirator, known to the Grand Jury, at PriceTravel in Cali, Colombia.

17.     While engaging in visa fraud, RODRIGUEZ, MESA, and ISAACS collected and maintained personal information regarding the victims, such as their dates of birth, and names and addresses of family members in Colombia and Cuba.

<u>Debt Bondage, Violence, and Threats</u>

18.     After the Colombian victims arrived in the United States, it became apparent to them that the Defendants had lied.  RODRIGUEZ did not own Michael's, and MESA facilitated their employment at Michael's.  RODRIGUEZ and MESA became increasingly more controlling and violent, and they demanded more and more money from the victims.  To keep the victims in debt and to continue exploiting them, RODRIGUEZ and MESA found ways to increase some of the victims' debts by charging additional amounts for "sick visits" from someone purporting to be

a doctor who provided injections, and by offering opportunities to engage in marriage fraud to obtain legal status.

19.     In or around April 2016, ISAACS directly recruited K.M.L., an adult Colombian female, who had previously received a personal loan from ISAACS's employing bank.  K.M.L. arrived in the United States and began living with RODRIGUEZ and MESA at an apartment located at 201 Main Street, in Houston, Texas.  At this time, MESA was working at a different strip club in Houston, Texas.

20.     RODRIGUEZ confiscated K.M.L.'s Colombian passport, which contained her United States visa.  MESA coordinated K.M.L.'s employment at Michael's.  K.M.L. had to strip to her underwear in front of one of Michael's managers before she was approved to work.  K.M.L. did not receive any wages from Michael's and had to pay approximately $30 USD to Michael's to work each night.  Michael's also had a VIP/Champagne Room, where customers could pay for a bottle of champagne to gain entry to this area and where acts of prostitution took place.

21.     K.M.L. did not have a written contract with RODRIGUEZ and MESA.  After an initial period of allowing  K.M.L. to keep some of her earnings from Michael's, RODRIGUEZ and MESA began taking K.M.L.'s earnings.  As K.M.L. began working, MESA worked less and less.  RODRIGUEZ and MESA became increasingly controlling and violent and pressured K.M.L. to earn more money at Michael's.

22.     On several occasions, RODRIGUEZ and MESA threatened K.M.L. with a deadly weapon.  On one of these occasions, K.M.L. told RODRIGUEZ she wanted to leave.  In response, RODRIGUEZ demanded payment of $20,000 USD.  K.M.L. informed RODRIGUEZ that a client was willing to pay her debt.  To teach K.M.L. a lesson for wanting to leave, RODRIGUEZ grabbed and dragged K.M.L. by her hair and held a gun to her head and also threatened to harm her with a

knife.

23.   K.M.L. informed ISAACS that she was in a bad situation.  Regardless, ISAACS continued to recruit D.T.G., an adult Colombian female, for whom he had previously facilitated a loan.

24.   In August 2016, RODRIGUEZ and MESA took K.M.L. back to Colombia, where ISAACS had arranged casting calls for additional women.

25.   After hosting the casting calls in late August 2016, RODRIGUEZ and MESA brought D.T.G. to Houston, Texas, on September 3, 2016.

26.   After finding out that L.G.S., an adult Colombian female and friend of D.T.G., was also in dire need of money, RODRIGUEZ and MESA recruited and brought L.G.S. to the United States.  Having previously visited the United States, L.G.S. already had a visa to the United States.

27.   After K.M.L.'s return to Colombia, RODRIGUEZ and MESA adjusted their scheme to require the victims to sign debt bondage contracts.

28.   RODRIGUEZ and MESA required D.T.G. and L.G.S. to each sign debt bondage contracts for $25,000 USD, with a daily debt repayment of $250 USD.

29.   In October 2016, RODRIGUEZ, MESA, and ISAACS obtained a non-immigrant visitor visa for E.C.R., an adult Colombian female.  RODRIGUEZ and MESA then brought E.C.R. to the United States and required her to sign the same debt bondage contract for $25,000 USD. When E.C.R. refused to sign the contract, MESA and RODRIGUEZ threatened to destroy E.C.R.'s visa.

30.   RODRIGUEZ and MESA also recruited another vulnerable victim within the United States.  After finding out that A.B.O., an adult Cuban female who had been working at Michael's, had escaped an abusive relationship and had nowhere to go, RODRIGUEZ and MESA

recruited A.B.O. and ultimately required her to sign a debt contract.  Because the Defendants did not illegally bring A.B.O. to the United States, RODRIGUEZ and MESA levied a lesser debt of $13,200 for A.B.O.

31.     The victims were not given a copy of their contracts.  These contracts fraudulently promised the victims that they would be provided with work permits, legal documentation, and medical care, among other items.  To keep the victims further in debt, the debt bondage contract provided for monetary fines if the victim engaged in romantic relationships, "outings away from the Establishment" without RODRIGUEZ and MESA's consent, and for taking a scheduled workday off.

32.     RODRIGUEZ and MESA controlled the victims by living with them in the same house and providing cellular phones to the victims in order to monitor them and track their locations.  The victims were required to report their locations constantly to RODRIGUEZ and MESA and were punished for leaving the house or going places without RODRIGUEZ and MESA's prior consent.

33.     MESA facilitated the victims' employment at Michael's.  As purported proof of the victims' eligibility to work in the United States, and to conceal the victims' true legal status from law enforcement, RODRIGUEZ and MESA supplied fraudulent temporary Texas Driver's Licenses and Social Security cards.  Although the temporary Texas Driver's Licenses portrayed photos of the victims, the temporary licenses were in the names and dates of birth of real individuals who had names similar to those of the victims.

34.     Ultimately, RODRIGUEZ and MESA forced, threatened, defrauded, and coerced K.M.L., D.T.G., L.G.S., E.C.R., and A.B.O. into engaging in commercial sex acts in Houston, Texas.

35.     After the victims were able to leave RODRIGUEZ and MESA, RODRIGUEZ instructed the victims and MESA to lie to and not cooperate with law enforcement.

## COUNT 1
## Sex Trafficking Conspiracy
## 18 U.S.C. §§ 1594(c), 1591(a)

36.     The allegations in Paragraphs 1 through 35 are incorporated here.

37.     From on or about April 27, 2016, through on or about December 15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

### LUIS DE JESUS RODRIGUEZ and
### HELEN LEON MESA,

did knowingly and intentionally conspire with each other and others known and unknown to the Grand Jury to knowingly, recruit, entice, harbor, transport, provide, obtain, and maintain one or more persons, in and affecting interstate and foreign commerce, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and as well as a combination of such means, would be used to cause such persons to engage in one or more commercial sex acts, in violation of 18 U.S.C. §§ 1594(c) and 1591(a).

## COUNT 2
## Sex Trafficking by Means of Force, Fraud, or Coercion – K.M.L.
## 18 U.S.C. §§ 1591(a) and 2

38.     The allegations in Paragraphs 1 through 35 are incorporated here.

39.     From or about April 27, 2016, through on or about August 27, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

### LUIS DE JESUS RODRIGUEZ and
### HELEN LEON MESA,

knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained K.M.L., in and affecting interstate and foreign commerce, knowing and in reckless disregard of the fact that means of force, threats of force, fraud and coercion, as well as a combination of such means,

8

would be used to cause K.M.L. to engage in one or more commercial sex acts in violation of 18 U.S.C. §§ 1591(a), 1591(b)(1), and 2.

## COUNT 3
### Sex Trafficking Means of Force, Fraud, or Coercion – D.T.G.
### 18 U.S.C. §§ 1591(a) and 2

40.     The allegations in Paragraphs 1 through 35 are incorporated here.

41.     From on or about July 12, 2016, through on or about December 15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained D.T.G., in and affecting interstate and foreign commerce, knowing and in reckless disregard of the fact that means of force, threats of force, fraud and coercion, and any combination of such means, would be used to cause D.T.G. to engage in one or more commercial sex acts in violation of 18 U.S.C. §§ 1591(a), 1591(b)(1), and 2.

## COUNT 4
### Sex Trafficking Means of Force, Fraud, or Coercion – L.G.S.
### 18 U.S.C. §§ 1591(a) and 2

42.     The allegations in Paragraphs 1 through 35 are incorporated here.

43.     From or about September 5, 2016, through on or about December 15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained L.G.S., in and affecting interstate and foreign commerce, knowing and in reckless disregard of the fact that means of force, threats of force, fraud and coercion, and any combination of such means, would be used to cause L.G.S. to engage in one or more commercial sex acts in violation of 18 U.S.C. §§

1591(a), 1591(b)(1), and 2.

## COUNT 5
### Sex Trafficking by Means of Force, Fraud, or Coercion – E.C.R.
### 18 U.S.C. §§ 1591(a) and 2

44.    The allegations in Paragraphs 1 through 35, are incorporated here.

45.    From on or about October 4, 2016, through on or about December 15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

knowingly, recruited, enticed, harbored, transported, provided, obtained, and maintained E.C.R., in and affecting interstate and foreign commerce, knowing and in reckless disregard of the fact that means of force, threats of force, fraud and coercion, and any combination of such means, would be used to cause E.C.R. to engage in one or more commercial sex acts in violation of 18 U.S.C. §§ 1591(a), 1591(b)(1), and 2.

## COUNT 6
### Sex Trafficking by Means of Force, Fraud, or Coercion – A.B.O.
### 18 U.S.C. §§ 1591(a) and 2

46.    The allegations in Paragraphs 1 through 35 are incorporated here.

47.    From or about November 1, 2016, through on or about December 15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

knowingly, recruited, enticed, harbored, transported, provided, obtained, and maintained A.B.O., in and affecting interstate and foreign commerce, knowing and in reckless disregard of the fact that means of force, threats of force, fraud and coercion, and any combination of such means, would be used to cause A.B.O. to engage in one or more commercial sex acts in violation of 18 U.S.C. §§ 1591(a), 1591(b)(1), and 2.

## COUNT 7
### Obstruction and Interference with the Enforcement of 18 U.S.C. § 1591 (Sex Trafficking)

48.     The allegations in Paragraphs 1 through 35 are incorporated here.

49.     Beginning on or about December 15, 2016, and continuing until the present, in the Houston Division of the Southern District of Texas and elsewhere, defendant

### LUIS DE JESUS RODRIGUEZ

did knowingly and intentionally obstruct, and did attempt to do so, and did knowingly and intentionally interfere with and prevent the enforcement of 18 U.S.C. § 1591(a) specifically, as to Counts One, Two, Three, Four, Five, and Six, in violation of 18 U.S.C. § 1591(d).

## COUNT 8
### Conspiracy to Transport Helen Mesa for Prostitution through Coercion and Enticement
### 18 U.S.C. § 371

50.     The allegations in Paragraphs 1 through 35 are incorporated here.

51.     From or about January 25, 2016, and through April 2016, within the Houston Division of the Southern District of Texas and elsewhere, defendants

### LUIS DE JESUS RODRIGUEZ and
### LILIBETH CAMARGO,

did knowingly conspire with each other and others known and unknown to the Grand Jury, and agreed to persuade, induce, entice, and coerce individuals to travel in interstate and foreign commerce, to engage in prostitution and any sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. §§ 371 and 2422(a).

### Manner and Means of the Conspiracy

52.     It was an object of the conspiracy to bring young women from Colombia and to profit financially from their prostitution activities in Houston, Texas.

53.     It was part of the conspiracy that RODRIGUEZ and CAMARGO recruited young

women from Colombia to work as prostitutes in the United States.

54.     RODRIGUEZ and CAMARGO made promises to the young women about the amounts of money they would earn from prostitution.  RODRIGUEZ and CAMARGO also promised to obtain and pay for the women's necessary immigration documents and travel to the United States.

### Overt Acts

55.     RODRIGUEZ and CAMARGO traveled together from Houston, Texas to Colombia on or about January 25, 2016.  In Colombia, they met with ISAACS, who assisted in recruiting women from Colombia.

56.     At a meeting with ISAACS, CAMARGO, and other women who were interested in coming to the United States, ISAACS and CAMARGO made false promises about the money that the women would be able to make from dancing and prostituting at strip clubs in the United States.  CAMARGO also stated that RODRIGUEZ was a successful businessman in Houston, Texas, who wanted to find dancers for his strip club in the United States.  CAMARGO's mother and brother were present at this meeting.  CAMARGO claimed that her mother had a "contact" at the U.S. Embassy in Bogota, Colombia, and that her mother could help facilitate the receipt of U.S. visas for the young women.

57.     CAMARGO and RODRIGUEZ offered commissions to those who introduced them to young Colombian women who later traveled to the United States.

58.     In April 2016, CAMARGO traveled to Colombia again and held another recruiting meeting with young females, including MESA.  CAMARGO promised that the young women would make approximately $1,000 USD each day and that the women could make a lot of money by engaging in prostitution.  CAMARGO also promised that the women would receive visas and

transportation to the United States, among other benefits.

59.     CAMARGO put MESA in touch with RODRIGUEZ, who agreed with CAMARGO that MESA should travel to the United States.

60.     CAMARGO and RODRIGUEZ persuaded, induced, enticed, and coerced MESA to travel from Colombia to Houston, Texas for MESA to work as a prostitute, in violation of 18 U.S.C. §§ 371 and 2422(a).

**COUNT 9**
**Coercion and Enticement – Helen Leon Mesa**
**18 U.S.C. § 2422(a)**

61.     The allegations in Paragraphs 1 through 60 are incorporated here.

62.     On or about May 12, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and**
**LILIBETH CAMARGO,**

did knowingly persuade, induce, entice, and coerce, and did attempt to persuade, induce, entice and coerce an adult female, Helen Leon Mesa, to travel in interstate and foreign commerce, specifically from Colombia, to Houston, Texas, to engage in prostitution and any sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. §§ 2422(a) and 2.

**COUNT 10**
**Coercion and Enticement – D.T.G.**
**18 U.S.C. § 2422(a)**

63.     The allegations in Paragraphs 1 through 60 are incorporated here.

64.     On or about August 27, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendant

**LUIS DE JESUS RODRIGUEZ**

did knowingly persuade, induce, entice, and coerce, and did attempt to persuade, induce, entice and coerce an adult female, D.T.G., to travel in interstate and foreign commerce, specifically from Colombia, to Houston, Texas, to engage in prostitution and any sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. §§ 2422(a) and 2.

## COUNT 11
### Conspiracy to Commit Visa Fraud
### 18 U.S.C. § 371

65.     The allegations in Paragraphs 1 through 60 are incorporated here.

66.     From on or about April 14, 2016, and through on or about December 15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and**
**HELEN LEON MESA,**

did knowingly and intentionally conspire with each other and others known and unknown to the Grand Jury to commit an offense against the United States, that is, to knowingly and willfully aid, abet, counsel, command, induce, and procure another person to utter, use, to use, possess, obtain, accept, and receive a visa, namely a non-immigrant B1/B2 visitor visa, for entry into the United States and as evidence of authorized stay and employment in the United States, knowing that the visa had been procured by means of false claims and statements, and to have been otherwise procured by fraud and unlawfully obtained, in violation of 18 U.S.C. § 1546(a).

### Manner and Means of Conspiracy

67.     It was part of the plan and purpose of the conspiracy that the members of the conspiracy facilitated the international transportation of the victims from Colombia to the United States by engaging in widespread visa fraud for financial gain.

68.     Members of the conspiracy assisted victims in obtaining fraudulent visas through the use of false statements. The Defendants and conspirators known and unknown to the Grand Jury completed visa documents for the victims, which included multiple false statements. Among those false statements, the documents falsely claimed that the victims did not intend to work in the United States. The Defendants created false backgrounds for the victims, including fictitious occupations, and coached the victims on what to say during their visa interviews at the United States embassy to avoid detection and receive their visas. ISAACS, RODRIGUEZ, and MESA all knew that the victims would work for RODRIGUEZ and MESA in the United States.

<strong><u>Overt Acts</u></strong>

69.     In furtherance of the conspiracy and to effect the objects thereof, within the Southern District of Texas and elsewhere, RODRIGUEZ, MESA, ISAACS, and co-conspirators known and unknown to the Grand Jury committed and caused to be committed, among others, at least one of the following overt acts.

70.     On or about June 3, 2016, co-conspirators known and unknown to the Grand Jury completed and submitted a fraudulent visa application for K.M.L., which falsely stated that she was traveling to the United States for tourism and that K.M.L. was employed as a nurse in Colombia. In June 2016, ISAACS facilitated the receipt of K.M.L.'s visa and coached her in preparation for her interview at the United States embassy.

71.     On or about August 7, 2016, co-conspirators known and unknown to the Grand Jury completed and submitted a fraudulent visa application for D.T.G., which falsely stated that she was traveling to the United States for a vacation with her boyfriend, ISAACS.

72.     RODRIGUEZ, MESA, and ISAACS instructed D.T.G. to falsely state that she worked at a training center for transporters of hazardous material and that ISAACS was her

boyfriend.

73.     In early to mid-August 2016, ISAACS facilitated the receipt of D.T.G.'s visa. ISAACS also took D.T.G. for her fingerprinting and visa interview at the United States embassy in Bogota, Colombia.

74.     On October 4, 2016, co-conspirators known and unknown to the Grand Jury completed and submitted a fraudulent visa application for E.C.R., which falsely stated that she was traveling to the United States for a vacation with her fiancé.  E.C.R. was instructed to falsely state that she worked at a business where she was a logistics supervisor.

75.     In early October 2016, ISAACS facilitated the receipt of E.C.R.'s visa.  ISAACS also took E.C.R. for her fingerprinting and visa interview at the United States Embassy in Bogota, Colombia.

76.     Throughout the conspiracy, RODRIGUEZ, MESA, and other individuals known to the Grand Jury financially facilitated obtaining the fraudulent visas for K.M.L., D.T.G., and E.C.R., by wiring money to ISAACS and other co-conspirators in Colombia, all in violation of 18 U.S.C. § 371.

## COUNT 12
## Visa Fraud – K.M.L.
## 18 U.S.C. §§ 1546 and 2

77.     The allegations in Paragraphs 1 through 76 are incorporated here.

78.     From on or about April 27, 2016, through on or about August 27, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

### LUIS DE JESUS RODRIGUEZ and
### HELEN LEON MESA,

aiding and abetting one another, did knowingly and willfully aid, abet, counsel, command, induce, and procure another person to utter, use, attempt to use, possess, obtain, accept, and receive a visa,

namely a non-immigrant B1/B2 visitor visa, for entry into the United States and as evidence of authorized stay and employment in the United States, knowing that the visa had been procured by means of false claims and statements, and to have been otherwise procured by fraud and unlawfully obtained for K.M.L. to wit, false representations were made regarding K.M.L.'s occupation and purpose of her trip, in violation of 18 U.S.C. §§ 1546 and 2.

### COUNT 13
### Visa Fraud – D.T.G.
### 18 U.S.C. §§ 1546 and 2

79.     The allegations in Paragraphs 1 through 76 are incorporated here.

80.     From on or about July 12, 2016, through on or about December 15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

aiding and abetting one another, did knowingly and willfully aid, abet, counsel, command, induce, and procure another person to utter, use, attempt to use, possess, obtain, accept, and receive a visa, namely a non-immigrant B1/B2 visitor visa, for entry into the United States and as evidence of authorized stay and employment in the United States, knowing that the visa had been procured by means of false claims and statements, and to have been otherwise procured by fraud and unlawfully obtained for D.T.G., to wit, false representations were made regarding D.T.G.'s occupation and purpose of her trip, in violation of 18 U.S.C. §§ 1546 and 2.

### COUNT 14
### Visa Fraud – E.C.R.
### 18 U.S.C. §§ 1546 and 2

81.     The allegations in Paragraphs 1 through 76 are incorporated here.

82.     From on or about October 4, 2016, and continuing until on or about December 15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

aiding and abetting one another, did knowingly and willfully aid, abet, counsel, command, induce, and procure another person to utter, use, attempt to use, possess, obtain, accept, and receive a visa, namely a non-immigrant B1/B2 visitor visa, for entry into the United States and as evidence of authorized stay and employment in the United States, knowing that the visa had been procured by means of false claims and statements, and to have been otherwise procured by fraud and unlawfully obtained for E.C.R. to wit, false representations were made regarding E.C.R.'s occupation and purpose of her trip, in violation of 18 U.S.C. §§ 1546 and 2.

### COUNT 15
### International Money Laundering Conspiracy
### 18 U.S.C. § 1956(h)

83.    The allegations in Paragraphs 1 through 76 are incorporated here.

84.    From on or about April 14, 2016, and continuing until on or about December 15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

did knowingly conspire with others known and unknown to the Grand Jury, to knowingly transport, transmit, and transfer monetary instruments and funds from places in the United States to places outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, visa fraud, in violation of 18 U.S.C. § 1546, in violation of 18 U.S.C. § 1956(a)(2)(A) and 1956(h).

### COUNT 16
### Alien Harboring Conspiracy
### 8 U.S.C. §§ 1324(a)(1)(A)(v)(I)

85.    The allegations in Paragraphs 1 through 76 are incorporated here.

86.     From on or about June 18, 2016, and continuing until on or about December 15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

did knowingly and intentionally conspire together, and with others known and unknown to the Grand Jury, to conceal, harbor, and shield from detection aliens in any place, including any building and any means of transportation, knowing and in reckless disregard of the fact that such aliens had come to, entered, and remained in the United States in violation of the law, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), all in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).

## COUNT 17
### Alien Harboring for Financial Gain – K.M.L.
### 8 U.S.C. §§ 1324(a)(1)(A)(iii) & (a)(1)(B)(i)

87.     The allegations in Paragraphs 1 through 76 are incorporated here.

88.     From on or about June 18, 2016, and continuing until on or about August 27, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

knowingly and in reckless disregard of the fact that a certain alien, namely K.M.L., had come to, entered, and remained in the United States in violation of law, did conceal, harbor, and shield from detection, and attempt to conceal, harbor, and shield from detection, said alien at residences located at 201 Main St. #8G and 223 Gessner St., Houston, Texas, and elsewhere in for the purpose of commercial and private financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

## COUNT 18
### Alien Harboring for Financial Gain – D.T.G.
### 8 U.S.C. §§ 1324(a)(1)(A)(iii) & (a)(1)(B)(i)

89.     The allegations in Paragraphs 1 through 76 are incorporated here.

90.     From on or about September 3, 2016, and continuing until on or about December

15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

did knowingly and in reckless disregard of the fact that a certain alien, namely D.T.G., had come

to, entered, and remained in the United States in violation of law, did conceal, harbor, and shield

from detection, and attempt to conceal, harbor, and shield from detection, said alien at a residence

located at 223 Gessner St., in Houston, Texas, and elsewhere for the purpose of private financial

gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

### COUNT 19
### Alien Harboring for Financial Gain – E.C.R.
### 8 U.S.C. §§ 1324(a)(1)(A)(iii) & (a)(1)(B)(i)

91.     The allegations in Paragraphs 1 through 76 are incorporated here.

92.     From on or about October 28, 2016, and continuing until on or about December 15,

2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

did knowingly and in reckless disregard of the fact that a certain alien, namely E.C.R., had come

to, entered, and remained in the United States in violation of law, did conceal, harbor, and shield

from detection, and attempt to conceal, harbor, and shield from detection, said alien at a residence

located at 223 Gessner St., in Houston, Texas, and elsewhere for the purpose of commercial

advantage and private financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

### COUNT 20
### Aggravated Identity Theft – D.T.
### 18 U.S.C. §1028A

93.     The allegations in Paragraphs 1 through 76 are incorporated here.

94.     From on or about September 3, 2016 and continuing until on or about December

15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

did knowingly possess and use, without lawful authority, a means of identification of another person, to wit, the name, date of birth, and Texas Driver's License number of D.T., during and in relation to alien harboring for financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (a)(1)(B)(i), knowing that the means of identification belonged to another actual person, in violation of 18 U.S.C. § 1028A.

### COUNT 21
### Aggravated Identity Theft – E.R.
### 18 U.S.C. §1028A

95.    The allegations in Paragraphs 1 through 76 are incorporated here.

96.    From on or about October 28, 2016 and continuing until on or about December 15, 2016, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

did knowingly possess and use, without lawful authority, a means of identification of another person, to wit, the name, date of birth, and Texas Driver's License number of E.R., during and in relation to alien harboring for financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (a)(1)(B)(i), knowing that the means of identification belonged to another actual person, in violation of 18 U.S.C. § 1028A.

### NOTICE OF FORFEITURE
### 18 U.S.C. § 1594(d)

97.    Pursuant to 18 U.S.C. § 1594(d), the United States gives notice to defendants,

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

that upon their conviction of any of Counts 1 through 6, the United States intends to seek forfeiture

of:

    (A)    all property, real or personal, that was involved in, used, or intended to be used to commit or to facilitate the commission of such violation, and any property traceable to such property; and

    (B)    all property, real or personal, that constitutes or is derived from any proceeds obtained, directly or indirectly, as a result of such violation, or any property traceable to such property.

## NOTICE OF FORFEITURE
### 18 U.S.C. § 2428

98.    Pursuant to 18 U.S.C. § 2428, the United States gives notice to defendants,

**LUIS DE JESUS RODRIGUEZ and
LILIBETH CAMARGO,**

that upon their conviction of any of Counts 8 through 10, the United States intends to seek

forfeiture of:

    (A)    all property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violation; and

    (B)    all property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of such violation.

## NOTICE OF FORFEITURE
### 18 U.S.C. § 982(a)(6)

99.    Pursuant to 18 U.S.C. § 982(a)(6), the United States gives notice to defendants,

**LUIS DE JESUS RODRIGUEZ and
HELEN LEON MESA,**

that upon their conviction of any of Counts 11 through 14 and Counts **16 through 19**, the United

States intends to seek forfeiture of:

    (A)    any conveyance, including any vessel, vehicle, or aircraft, used in the commission of the offense;

(B)     all property, real or personal, that constitutes, or is derived from or is traceable to the proceeds obtained, directly or indirectly, from the commission of the offense; and

(C)     all property, real or personal, that is used to facilitate, or is intended to be used to facilitate, the commission of the offense.

## NOTICE OF FORFEITURE
### 18 U.S.C. § 982(a)(1)

100.     Pursuant to 18 U.S.C. § 982(a)(1), the United States gives notice to defendants,

### LUIS DE JESUS RODRIGUEZ and
### HELEN LEON MESA,

that upon conviction for conspiracy to commit money laundering, in violation of 18 U.S.C. §

1956(h), as charged in Count 15 of this Indictment, the United States intends to seek forfeiture of

all property, real or personal, involved in money laundering offenses or traceable to such property.

## NOTICE OF FORFEITURE
### 8 U.S.C. § 1324(b)(1)

101.     Pursuant to 8 U.S.C. § 1324(b)(1), the United States gives notice to defendants,

### LUIS DE JESUS RODRIGUEZ and
### HELEN LEON MESA,

that upon their conviction of any of Counts 16 through 19, the United States intends to seek

forfeiture of:

(A)     any conveyance, including any vessel, vehicle, or aircraft, that has been or is being used in the commission of such violation; and

(B)     the gross proceeds of such violation, and any property traceable to such conveyance or proceeds.

## MONEY JUDGMENT AND SUBSTITUTE ASSETS

The United States intends to seek the imposition of a money judgment against each defendant. Defendants are notified that in the event that one or more conditions listed in 21 U.S.C. § 853(p) exists, the United States will seek to forfeit any other property of each defendant up to the amount of the money judgment against that defendant.

TRUE BILL:

ORIGINAL SIGNATURE ON FILE

FOREPERSON OF THE GRAND JURY

RYAN K. PATRICK
United States Attorney

By: _____
Eun Kate Suh
Zahra Jivani Fenelon
Assistant United States Attorneys